Filed 9/27/13  Lugo v. Good Guys Auto Sales CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSE LUGO et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GOOD GUYS AUTO SALES, INC. et al., <br><br> Defendants and Respondents. | D061620 <br><br><br> (Super. Ct. No. 37-2010-00088957-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Michael E. Lindsey for Plaintiffs and Appellants.

Jeffrey D. Poindexter for Respondent Good Guys Auto Sales, Inc.

Klinedinst PC, G. Dale Britton and Mark H. Nys for Respondent Mission Federal Credit Union.

INTRODUCTION

This action by plaintiffs Jose Lugo (Jose) and his wife Diane Lugo (Diane)[1] (together the Lugos) alleging various causes of action for breach of warranty, violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), fraud, and negligent misrepresentation arose when Jose (1) purchased a 2000 GMC Yukon in late April 2005 from defendant Good Guys Auto Sales, Inc. (Good Guys); (2) financed the purchase through Good Guys' assignee, defendant Mission Federal Credit Union (Mission Federal); (3) continued to have various mechanical problems with the Yukon in June 2005 after at least three attempts by Good Guys to fix the problems, which included an oil leak and problems with the front shocks and axle; and (4) experienced problems in registering the Yukon in Arizona in April 2009 after they moved there, at which time they learned that (a) a restitution lien—which resulted from a restitution order entered against a previous owner of the Yukon in an Arizona criminal case in February 2005 before Jose purchased it—at some point attached to the title of the Yukon, and (b) the Yukon had been in an accident—which Good Guys did not disclose to Jose—that resulted in frame damage before he purchased the Yukon.

---

[1] We will refer to the Lugos by their first names for clarity and convenience only. We intend no disrespect.

The Lugos filed their original complaint on April 1, 2010, almost five years after Good Guys' last unsuccessful repair work on the Yukon in June 2005, and after they had driven it more than 62,000 miles.

The court granted the summary judgment motion jointly filed by Good Guys and Mission Federal (together defendants), finding the undisputed material facts established that Diane did not have standing to bring any of the claims alleged in the Lugos' second amended complaint, and all six of the Lugos' causes of action were time-barred under the applicable statutes of limitation.

The Lugos appeal from the grant of summary judgment in favor of defendants, raising four principal contentions. First, they contend the court "erred when it held[,] as a matter of law, that incidental mechanical issues constitute inquiry notice, commencing the statute of limitations on the later[-]discovered frame damage and bad title."

Second, they contend the court erred in finding Diane lacked standing to assert a claim under the CLRA.

Third, they claim the court erred when it dismissed their sixth cause of action for breach of warranty of title because the question of "[w]hen the restitution lien actually attached to the title is not relevant," and "[a] jury could reasonably infer that the title was bad prior to sale of the vehicle to [the Lugos]" because "the only evidence before the Court was that the restitution lien attached prior to the sale to [them]."

Last, and related to their third contention, the Lugos claim the court erred by admitting the declaration of Scott Boling, an employee of the Motor Vehicle Division of the Arizona Department of Transportation (Arizona MVD), who stated that the criminal

3

restitution order was notated in the Arizona MVD title records as a lien against the prior owner's interest in the Yukon *after* April 2005 (the month Jose purchased it from Good Guys).

For reasons we shall explain, we conclude the court properly granted summary judgment in favor of Good Guys and Mission Federal. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*

1. *2004 Arizona accident*

As shown by a November 2009 CARFAX Vehicle History Report that the Lugos obtained before they commenced this action in April 2010, the Yukon was involved in a 2004 "front impact" accident that resulted in the filing of a police report in Arizona.

2. *Arizona title and registration records; restitution lien against Marcelo Pacheco* (*a prior owner of the Yukon in Arizona*)*; and subsequent repossession of the Yukon by Triad Financial Corporation, the prior first lien holder, before Good Guys purchased the Yukon from Triad Financial Corporation and sold it to Jose*

According to the title and registration records of the Motor Vehicle Division of the Arizona Department of Transportation (Arizona MVD), the Arizona MVD titled the subject 2000 GMC Yukon in January 2004, listing the registered owners in Arizona as Aide R. Pacheco and Marcelo Paul Pacheco, and the first lien holder as Triad Financial Corporation.

4

a. *February 2005 Criminal Restitution Order and subsequent restitution lien against Marcelo Pacheco*

In early February 2005, a Criminal Restitution Order was entered against Marcelo Pacheco in the Superior Court of Maricopa County, Arizona, ordering him to pay restitution in the amount of $24,020. Sometime thereafter, notice to the Arizona MVD of the restitution order was notated in the Arizona MVD's title records as a lien against Marcelo Pacheco's interest in the Yukon.

b. *Triad Financial Corporation's repossession of the Yukon before it sold the Yukon to Good Guys*

Certified title record information in the Arizona MVD's Motor Vehicle Record for the Yukon, provided by the Arizona MVD in August 2011 after this action was commenced, shows that Triad Financial Corporation[2] repossessed the Yukon, and the restitution lien against Marcelo Pacheco then no longer applied.[3]

3. *Good Guys' March 2005 purchase and subsequent repair of the Yukon prior to its sale to Jose*

In March 2005, Good Guys purchased the Yukon, at an auction, from Triad Financial Corporation. Soon thereafter, Good Guys made repairs to the Yukon before it sold the vehicle to Jose. Among other things, Good Guys hired an auto body shop to

---

[2] Triad Financial Corporation is the predecessor of Santander Consumer USA, Inc. (Santander), a cross-defendant sued by Good Guys in this case, whose unopposed motion for summary judgment in this case was granted and who is not a party to this appeal.

[3] In granting Santander's motion for summary judgment (see fn. 2, *ante*), the court found that, "as a matter of law, Triad[ Financial Corporation's] repossession of the Yukon foreclosed any junior liens," which were "wipe[d] out," and Good Guys "received clean title, which is evidenced by the fact that the Yukon was registered in California."

replace the front right fender and pull the bent inner rail of the frame in an attempt to straighten it.

    4. *Jose's April 2005 purchase of the Yukon from Good Guys*

On April 23, 2005, Jose purchased the Yukon from Good Guys for a total sale price of $38,556. Diane did not sign the subject retail installment sales contract. Good Guys sold the Yukon to Jose with a written 30-day or 1,000-mile limited warranty. Jose did not ask whether the Yukon had been in an accident, and no one at Good Guys told him the Yukon had not been in an accident.

The Yukon odometer read 74,765 miles when Jose purchased the vehicle from Good Guys. In January 2010, three months before the Lugos commenced this action on April 1, 2010, the odometer read 136,977 miles, indicating the Yukon had been driven more than 60,000 miles after Jose bought it.

    5. *Jose's May 23, 2005 presentation to Good Guys of a list of problems with the Yukon, and Good Guys' three unsuccessful repair attempts during the period from May 23 through June 9, 2005*

On May 23, 2005, one month after he purchased the Yukon, Jose left the vehicle with a mechanic at Good Guys for several days with a written list of problems he claimed needed to be repaired. Jose's May 23 list mentioned (1) a rod for the spare tire, (2) a broken rear view mirror compass, (3) "shocks in front are still pop[p]ing when turning," (4) the "front 4x4 'pumpkin'[4] looks bad" because there are "small chips around it," (5) an "oil leak from oil pan gask[e]t and drain bolt, and (6) "seat heaters don't work."

---

4    Mission Federal asserts "[t]he term 'pumpkin' is slang used to describe the differential, which is a component of the front axle."

6

During the next couple of weeks, Jose brought the Yukon back to Good Guys for repairs at least three more times, and Good Guys provided him a loaner vehicle each time he left the Yukon with Good Guys. Good Guys had last possession of the Yukon on June 9, 2009. Jose did not contact Good Guys after that date to request additional repair work or complain that the repairs were not completed.

6. *The Lugos' April 2009 discovery of the restitution lien and collision damage while attempting to register the Yukon in Arizona*

On April 10, 2009, when Jose attempted to register the Yukon in Arizona after he moved there with Diane and their children, the Arizona MVD denied his request and notified him of the restitution lien in a document titled "Additional Requirements[-]Title and Registration," which stated:

> "THIS VEHICLE WAS PREVIOUSLY TITLED AND REGISTERED IN ARIZONA. THE PREVIOUS OWNER THAT HAD THIS VEHICLE HAS A *RESTITUTION LIEN* AND CAN NOT BE [TRANSFERRED] UNTIL THIS LIEN IS PAID IN FULL TO MARICOPA COUNTY. . . . [P]LEASE INVESTIGATE THIS PROBLEM." (Italics added.)

On that date, the Yukon underwent an Arizona MVD vehicle inspection, and the Arizona MVD informed Jose the Yukon had been in an accident.

7. *November 2009 CARFAX confirmation of the collision damage to the Yukon*

The Lugos confirmed the prior collision damage through a November 2009 CARFAX Vehicle History Report they ordered, which informed them the Yukon had been involved in a 2004 "front impact" accident that resulted in the filing of a police report in Arizona.

7

B. *Procedural Background*

1. *Second Amended Complaint*

The Lugos filed their original complaint on April 1, 2010, almost five years after Jose realized in June 2005 that Good Guys' attempts to repair the Yukon were unsuccessful. Their second amended complaint, which is the subject of Good Guys and Mission Federal's summary judgment motion and this appeal, asserted six causes of action against them: (1) breach of express and implied warranty in violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq., hereafter Song-Beverly) (first cause of action); (2) willful violation of the California CLRA (Civ. Code, § 1750 et seq.) (second cause of action); (3) "Fraud, Deceit, Intentional Misrepresentation and Concealment" (third cause of action) (4) "Negligent Misrepresentation—Fraud" (fourth cause of action); (5) breach of express warranty (Song-Beverly: Civ. Code, §§ 1791.2, 1794) (fifth cause of action); and (6) "Implied Warranty of Merchantability Title" (sixth cause of action). The gravamen of the Lugos' claims, as the Lugos acknowledge on appeal, is that Good Guys failed to disclose the prior collision damage, including damage to the frame, and failed to deliver "good title."

2. *Defendants' joint motion for summary judgment or, in the alternative, summary adjudication*

In their joint motion for summary judgment or, in the alternative, summary adjudication, as pertinent here, Good Guys and Mission Federal argued they were entitled to summary judgment because:

8

a. Diane lacked standing as a plaintiff because "[s]he is not on the purchase contract," and "[s]he did not purchase the Yukon; her husband [Jose] did";

b. The first cause of action under Song-Beverly for breach of warranty, alleging Good Guys failed to disclose that the Yukon had been in an accident and that it was transferred with other than clear title, was barred by the four-year statute of limitations set forth in Uniform Commercial Code section 2725, which they asserted is not subject to the delayed discovery rule, because the Lugos filed their complaint in April 2010 more than four years after the limitation period expired on June 9, 2009;

c. The second cause of action for violation of the CLRA failed because there was "no evidence Good Guys attempted to deceive or misrepresent anything," and it was barred by the three-year statute of limitations set forth in Civil Code section 1783;

d. The third cause of action for fraud failed because there was "no evidence of a knowingly false representation";

e. The fourth cause of action for negligent misrepresentation, alleging Good Guys negligently misrepresented that the Yukon had never been in an accident and it would not have title problems in Arizona, failed because (a) Jose's deposition testimony established Good Guys never represented the Yukon had not been in an accident, and (b) the declaration of Good Guys' owner, Nader Mohammadinejad, established that Good Guys had no knowledge that there was, or may have been, a problem registering the Yukon in Arizona;

f. The third cause of action for fraud and fourth cause of action for negligent misrepresentation were time-barred because (i) the three-year limitations period for fraud

9

(Code Civ. Proc., § 338) and two-year limitations period for negligent misrepresentation (Code Civ. Proc., § 339, subd. (1)) began to run when Jose knew or should have known, or suspected or should have suspected, the Yukon had been in an accident; and (ii) here, Jose's May 23, 2005 list of needed repairs, his special interrogatory responses (discussed, *ante*), and the undisputed facts regarding the continuing problems (such as the engine oil leak) after Good Guys' three repair attempts (in May and June of that year), established that "he knew he had been injured in May of 2005," and he "should have . . . suspect[ed] he had a reason to sue before the end of 2005";

g. The <u>fifth cause of action</u> for breach of express warranty, which was premised upon Song-Beverly, failed because it was barred by the four-year statute of limitations set forth in Uniform Commercial Code section 2725; and

h. The <u>sixth cause of action</u> for breach of warranty of title, which is premised upon Uniform Commercial Code section 2312, failed because (i) "there has been no evidence . . . produced by [Jose] that title was bad at the time of the sale, i.e., [he] has not offered any evidence that the Marcelo Pacheco criminal restitution judgment had affected the title for the Yukon when Jose . . . purchased it in April of 2005"; and (ii) this cause of action was barred by the four-year statute of limitations set forth in Uniform Commercial Code section 2725.

In support of their motion, defendants submitted (among other things) the declaration of Mohammadinejad, and numerous authenticated exhibits, such as Jose's May 2005 list of problems with the Yukon, the February 2005 criminal restitution order against Marcelo Pacheco the April 2009 report of the Arizona MVD informing the Lugos

10

of the restitution lien, excerpts from the transcripts of the deposition testimony of Jose and Diane, and Jose's special interrogatory responses.

Defendants' separate statement of undisputed material facts specifically referenced the declaration of Scott Boling (Boling declaration), an employee of the Arizona MVD) who (as already noted) stated that the criminal restitution order was notated in the Arizona MVD title records as a lien against the prior owner's interest in the Yukon *after* April 2005 (the month Jose purchased it from Good Guys). In their separate statement, defendants informed the Lugos that the Boling declaration was "filed in support of Cross-Defendant Santander's motion for summary judgment set to be heard at the same date and time." (See fns. 2 & 3, *ante*).

2. *The Lugos' opposition*

In their opposition, as pertinent here, the Lugos argued Good Guys and Mission Federal's motion for summary judgment should be denied because (1) California is a community property state and, thus, Diane was a proper plaintiff as she had been damaged by Good Guys' misrepresentation; (2) the statutes of limitation for all claims began to run when the Lugos discovered the restitution lien and the prior collision damage on April 10, 2009 at the Arizona MVD vehicle inspection; (3) a triable issue existed as to whether the Lugos were entitled to a refund based on the restitution lien against Marcelo Pacheco, because the lien affected title to the Yukon at the time they purchased it in April 2005 as the February 2005 court order was "effective on the date of issuance"; and (4) the Lugos' claims for breach of the implied warranty were not time-barred because Good Guys concealed the prior collision damage and they did not

11

discover the collision until the April 10, 2009 Arizona MVD vehicle inspection, and when they ordered the November 2009 CARFAX report.

In support of their opposition, the Lugos submitted numerous authenticated exhibits, Jose's declaration, excerpts of the transcript of the deposition of Good Guys' owner, a copy of the Arizona MVD's Motor Vehicle Record for the Yukon showing the notation regarding the restitution lien, a copy of the CARFAX Vehicle History Report, and the declaration of two auto experts.

3. *Hearing and ruling*

After hearing oral arguments on defendants' summary judgment motion and taking the matter under submission, the court issued its separate rulings granting both that motion and Santander's unopposed summary judgment motion (which, as noted, is not at issue in this appeal).

In granting summary judgment in favor of Good Guys and Mission Federal, the court first found that Diane lacked standing to bring any of the claims asserted in the Lugos' complaint.[5]

The court then found all six causes of action were time-barred. Specifically, the court found the breach of warranty claims[6] asserted in the first and fifth causes of action

---

5     As we shall conclude the issue of Diane's standing is moot in light of our holding that all six causes of action fail as a matter of law, we need not discuss the court's stated reasons for determining she lacked standing.

6     As the court later addressed the Lugos' breach of warranty of title claim, it is apparent the court here was addressing the breach of warranty claims based on their allegation that Good Guys failed to disclose the prior collision damage.

12

were barred by the four-year statute of limitations set forth in Uniform Commercial Code section 2725.  The court noted that undisputed evidence showed Jose presented Good Guys with a list of repairs on May 23, 2005, and the last time he brought the Yukon to Good Guys for repairs was "no later than 2005."  The court then found the following undisputed facts "should have caused [Jose] to suspect that he had reason to sue before the end of 2005":  (1) the Yukon had a faulty airbag light; (2) Jose brought the Yukon in for repairs at least three times in the month after he purchased it from Good Guys; (3) the Yukon still leaked oil after three repair attempts in 2005; (4) Lugo performed maintenance on the Yukon, including oil changes, from the time of purchase through the filing of the lawsuit (in April 2010); (5) the Yukon had a nonfunctioning compass in 2005; (6) the seat heaters did not work in 2005; and (7) Jose stated in his deposition that he knew within days of June 9, 2005, that the repairs were not properly completed.

Based on these facts, the court then found the Lugos "should have investigated further," but undisputed evidence showed Jose "never took the Yukon to anyone else for repairs after June 9, 2005"; and the Lugos presented no evidence to show they conducted any kind of investigation until approximately May 2009, when they contacted Good Guys regarding the information they allegedly obtained in April 2009 (discussed, *ante*) from the Arizona MVD.  Noting that Jose ordered the CARFAX report in November 2009, the court found the Lugos "failed to establish [they] engaged in a diligent investigation of the circumstances of their purported injuries," and they "presented no authority for the proposition that [the] limitations period is tolled as long as the warranty is in effect."  The court determined that the breach of warranty claims asserted in the first and fifth causes

13

of action were time-barred, explaining that the Lugos "should have filed the action no later than Deember 2009," but "they did not do so until April 1, 2010."

Addressing next the breach of warranty of title claim asserted in the sixth cause of action, the court found "there is no evidence that [Good Guys] was aware of the title issue," and "there are no facts showing it knew about it in 2005" when it sold the Yukon to Jose. Citing *Ferraro v. Pacific Fin. Corp.* (1970) 8 Cal.App.3d 339, the court found Good Guys was entitled "to rely upon the title it received at auction." The court also found "there is no competent evidence that that the title was bad when [Good Guys] sold the Yukon to [Jose]." In addition, the court found "there is no evidence that this claim is subject to the exception regarding the no delayed discovery rule for a warranty claim,"[7] and, thus "the claim is time-barred."

Last, the court found "for the reasons stated above" that the second cause of action under the CLRA was barred by the three-year statute of limitations set forth in Civil Code section 1783, the third cause of action for fraud was barred by the three-year statute of limitations set forth in Code of Civil Procedure section 338, and the fourth cause of action for negligent misrepresentation was barred by the two-year statute of limitations

---

7    The court cited California Uniform Commercial Code section 2725, subdivision (2), which provides: "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except* that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (Italics added.) As we shall conclude that the court properly summarily adjudicated the breach of warranty of title claim on grounds other than limitations grounds, we shall not further discuss this exception.

14

set forth in Code of Civil Procedure section 339, subdivision (1). The Lugos' appeal followed.

DISCUSSION

I. *SUMMARY JUDGMENT PRINCIPLES AND STANDARD OF REVIEW*

On an appeal from a grant of summary judgment (or summary adjudication), we independently examine the record, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained, to determine whether a triable issue of material fact exists. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*); *Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 385.) We review the trial court's ruling, not the court's reasoning. (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1485.) In performing our de novo review, we view the evidence in a light favorable to the losing parties (here, the Lugos), liberally construing their evidentiary submission while strictly scrutinizing the prevailing parties' (here, defendants') own showing, and resolving any evidentiary doubts or ambiguities in favor of the losing party. (*Saelzler*, at pp. 768-769.)

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 (*Aguilar*), the California Supreme Court clarified the legal principles and standards that apply to summary judgment proceedings under Code of Civil Procedure section 437c. "[T]he part[ies]

15

moving for summary judgment bear[] the burden of persuasion that there is no triable issue of material fact and that [they are] entitled to judgment as a matter of law." (*Aguilar*, at p. 850, fn. omitted.) Defendants moving for summary judgment "bear[] the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid.*; § 437c, subds. (o)(2).) In such a case, the moving defendants "bear[] [the] initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, at p. 850.)

If the moving defendants meet this burden of production, the burden of production shifts to the plaintiffs to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the part[ies] opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.)

## II. *ANALYSIS*

### A. *The Lugos' Claims Regarding Prior Collision Damage to the Yukon Are Time-barred*

In granting defendants' motion for summary judgment, the court found the Lugos' claims regarding the prior collision damage to their Yukon, as set forth in the first through fifth causes of action, were time-barred. Asserting that "the delayed discovery rule applies to all [of their] causes of action," the Lugos contend the court "erred when it held[,] as a matter of law, that incidental mechanical issues constitute inquiry notice,

16

commencing the statute of limitations on the later[-]discovered frame damage . . . ."  In support of this contention, they assert (1) "[t]he failure of Good Guys to repair minor mechanical issues would not necessarily suggest to the ordinary person that the [Yukon] had frame damage"; and (2) "[t]he determination of what constitutes inquiry notice, and when the Lugos should have reasonably discovered facts necessary to put them on notice as to the frame damage and bad title, is a question of fact [that] should have been submitted to the trier of fact."  These contentions are unavailing.

        1.  *Background*

The court found that the following limitation periods, apart from any application of the discovery rule, governed the first through fifth causes of action:  (1) <u>first cause of action</u> under Song-Beverly for breach of express and implied warranties:  four years (Cal. U. Com. Code, § 2725, subd. (a); see *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1305-1306); (2) <u>second cause of action</u> for violation of the CLRA:  three years (Civ. Code, § 1783); (3) <u>third cause of action</u> for fraud:  three years (Code Civ. Proc., § 338); (4) <u>fourth cause of action</u> for negligent misrepresentation:  two years (Code Civ. Proc., § 339, subd. (1)); and (5) <u>fifth cause of action</u> under Song-Beverly for breach of express warranty:  four years (Cal. U. Com. Code, § 2725, subd. (a)).

        2.  *Applicable legal principles regarding accrual of a cause of action, the discovery rule, and inquiry notice*

"[S]tatutes of limitation do not begin to run until a cause of action accrues. [¶] Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'  An important exception to the general rule of accrual

17

is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [¶] A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807 (*Fox*), citations omitted.)

"A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a *suspicion of wrongdoing*, and therefore an incentive to sue, [he or] she must decide whether to file suit or sit on [his or] her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [the plaintiff] cannot wait for the facts to find [him or] her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 (*Jolly*), italics added.)

Thus, "[t]he discovery rule only delays accrual until the plaintiff has, or should have, *inquiry notice* of the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 807, italics added.)

"[I]n order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such

18

information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite *diligent investigation* of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox*, *supra*, 35 Cal.4th at pp. 808-809, italics added.)

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly*, *supra*, 44 Cal.3d at p. 1112; see also *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1055 ["To analyze these issues on appeal, we are required to examine the undisputed facts to determine whether only one legitimate inference may be drawn from them regarding the amount of notice or information of circumstances that would put a reasonable layperson on inquiry about potential wrongdoing that harmed her, such as will begin the running of the limitations period."].)

3. *Analysis*

We conclude the court did not err in finding the Lugos' claims regarding the prior collision damage to their Yukon, as set forth in the first through fifth causes of action of their second amended complaint, were time-barred. The undisputed facts establish that the Lugos reasonably should have suspected wrongdoing—and thus had inquiry notice— no later than June 2005, but they failed to diligently investigate the cause of the continuing mechanical problems with their Yukon, and they brought this action in April

19

2010 after the applicable limitations periods—the longest of which (as noted, *ante*) was four years—expired.

Specifically, the undisputed facts establish that Jose purchased the Yukon from Good Guys on April 23, 2005, and one month later on May 23 he left the vehicle with a mechanic at Good Guys for several days with a written list of problems he claimed needed to be repaired. Jose's May 23 list mentioned (among other things) that (1) the front shocks were "still pop[p]ing when turning"; (2) the "front 4x4 'pumpkin'" (a reference to a component of the front axle; see fn. 4, *ante*) "look[ed] bad"; and (3) there was an "oil leak." It is also undisputed that during the next couple of weeks, Jose brought the Yukon back to Good Guys for repairs at least two more times; and June 9, 2005, was the last date Good Guys had possession of the Yukon.

Also, Jose acknowledged in his deposition testimony that within days after he got the Yukon back from Good Guys in June 2005, he knew Good Guys had not repaired all the problems he had asked Good Guys to repair. He testified there was still a problem with the airbag light, and the engine still leaked oil. In his special interrogatory responses, Jose also acknowledged that the attempted repairs to the front shock absorbers and front axle were "unsuccessful." Given the nature of these persistent mechanical problems, a reasonable person in the Lugos' position would have suspected in June 2005 that the Yukon had been in an accident and that they had suffered harm as a result of wrongdoing.

The uncontested facts also show the Lugos did not diligently investigate the matter. It is undisputed that Jose did not contact Good Guys after June 9, 2005 to request

20

additional repair work or complain that the repairs were not completed; that Jose had no communication with Good Guys in 2006, 2007, or 2008; and that he never took the Yukon to anyone else for repairs after Good Guys allegedly failed to fix the problems on his May 23, 2005 list.

Finally, it is undisputed the Lugos did not commence this action until April 1, 2010, almost five years after Jose realized in June 2005 that Good Guys' attempts to repair the Yukon were unsuccessful.

Based on the foregoing undisputed facts, we conclude the only legitimate inference that may be drawn regarding the limitations issue is that a reasonable layperson in the Lugos' position would have had inquiry notice about potential wrongdoing no later than June 2005. The Lugos have not demonstrated, and cannot show, that they diligently investigated the cause of the serious and persistent mechanical problems they knew existed at that time, but they are charged with knowledge of the facts such an investigation would have disclosed. (See *Fox*, *supra*, 35 Cal.4th at pp. 808-809.) We conclude the Lugos' claims related to the prior collision damage to their Yukon, as set forth in the first through fifth causes of action of their complaint, are time-barred because the applicable limitations periods began to run no later than 2005 and expired no later than December 2009, as the court properly found, and the Lugos did not commence this action until April 1, 2010.

B. *The Lugos' Claims Regarding Title, and Their Objection to the Declaration of Scott Boling*

21

With respect to their claims that Good Guys wrongfully failed to disclose the prior restitution lien against Marcelo Pacheco and to "transfer clear and lien[-]free title" when Jose purchased the Yukon from Good Guys, the Lugos contend the court erred when it dismissed their sixth cause of action for breach of warranty of title because the question of "[w]hen the restitution lien actually attached to the title is not relevant," and "[a] jury could reasonably infer that the title was bad prior to sale of the vehicle to [the Lugos]" because "the *only evidence* before the Court was that the restitution lien attached prior to the sale to [them]" (italics added). This contention is unavailing.

In their summary judgment motion, defendants relied on—and the court admitted and considered—the declaration of Scott Boling, an employee of the Arizona MVD who stated he "regularly review[s] and assist[s] in the Arizona MVD's vehicle registration and vehicle title activities, including record review," and "assist[s] with the handling of restitution lien matters." Indicating he was "personally familiar" with the Arizona MVD records for the Lugos' Yukon, which (he noted) was "previously registered to Aide R. Pacheco and Marcelo Paul Pacheco," Boling stated that "the title record reflects that Triad Financial Corp[oration], the prior first lien holder, repossessed the vehicle and the restitution lien against one of the former owners, Marcelo Paul Pacheco, no longer applies to the vehicle."

Boling also asserted in his declaration that he was "regularly . . . involved in the processing of restitution liens and the handling of such liens in connection with Arizona MVD records and title issues"; and the Criminal Restitution Order entered against Marcelo Pacheco on February 23, 2005 in the Maricopa County Superior Court, was

22

"subsequently notated as a lien against Mr. Pacheco's interest in the [Yukon] on Arizona title records."

Boling also stated "[t]he Criminal Restitution Order entered against Marcelo Paul Pacheco was notated as a restitution lien to the Arizona MVD title records for the [Yukon] *after April 2005*." (Italics added.)

Although the Lugos claim the restitution lien against the prior owner, Marcelo Pacheco, encumbered title to the Yukon when Jose purchased it from Good Guys on April 23, 2005, the foregoing evidence, which the court properly admitted, established that the repossession of the Yukon by the prior first lien holder before Jose purchased it essentially eliminated the lien, and, thus, the lien did not encumber title to the Yukon when Good Guys sold it to Jose. This evidence also showed the lien did not appear in the Arizona MVD's records until sometime *after* Jose purchased the Yukon in April 2005.

The Lugos claim, however, that the court erred by considering Boling's two-and-a-half-page declaration. Specifically, they state the court "erred in admitting and/or considering" the declaration because it was "submitted *not with the subject* [*motion for summary judgment*]" (original emphasis), but with Santander's summary judgment motion (see fns. 2 & 3, *ante*). Citing *Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830 (*Artiglio*), they assert that "[r]eference to alleged evidence in other pleadings is improper" and "[i]t is not enough to cross-refer to other sources where such evidence may be located."

The Lugos' reliance on *Artiglio* is unavailing. In that case, which involved an appeal from a grant of summary judgment in favor of the defendant, another panel of this

23

court concluded the trial court was "fully warranted in concluding [defendant's] evidence was not disputed" because, "[r]ather than identifying any particular declaration, document, or deposition transcript which contradicted [defendant's] evidence, plaintiffs' separate statement of disputed facts merely stated:  'See evidence previously produced in opposition to [defendant's] earlier motions for summary judgment.' "  (*Artiglio*, *supra*, 61 Cal.App.4th at pp. 841-842.)  Here, unlike the plaintiff's inadequate separate statement in *Artiglio*, Good Guys and Mission Federal's separate statement *did* identify the particular declaration in question, stating, "See the Declaration of Scott Boling."  Defendants' separate statement specifically informed the Lugos that the Boling declaration was "filed in support of Cross-Defendant Santander's motion for summary judgment set to be heard at the same date and time."

The Lugos also claim they "were prejudiced because they were denied an opportunity to question the declarant [(Boling)]."  This claim is unavailing.  The record shows the Lugos' trial counsel, Michael Lindsey, who is also their appellate counsel, sent a letter in late October 2011 to Good Guys' counsel, the thrust of which was that he was unfairly surprised by the Boling declaration.  In response, Good Guys filed an ex parte application to continue the hearing date for the motions for summary judgment filed by Santander and by Good Guys and Mission Federal "to a date that resolves the concerns . . . expressed in Mr. Lindsey's letter."  However, as defendants point out, the Lugos did not pursue further discovery regarding this matter.

For all of the foregoing reasons, we conclude the court did not err in finding "there is no competent evidence that the title was bad when [Good Guys] sold the Yukon to

24

[Jose]."  We also conclude the court properly granted defendants' summary judgment motion.

C.  *DIANE'S STANDING*

The Lugos also contend the court erred in finding Diane lacked standing to assert a claim under the CLRA.  Specifically, they contend Diane has standing because Jose purchased the Yukon with community property funds, and she is a "consumer" within the meaning of the CLRA, which defines "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  (Civ. Code, § 1761, subd. (d).)

This contention is moot because all of the claims asserted in the Lugos' complaint fail as a matter of law, and, thus, we have concluded the court properly granted defendants' motion for summary judgment.

DISPOSITION

The judgment is affirmed.  Good Guys and Mission Federal shall recover their costs on appeal.

25

                                                                                NARES, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.